UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA
-oOo-

UNITED STATES OF AMERICA, Plaintiff,

vs.

PAUL RECKTENWALD, Defendant.

2:91-CR-00115-PMP-RJJ

**ORDER**

Before the Court for consideration is Defendant Recktenwald's Motion Request for Disclosure of Supervision Records of the U.S. Probation Office (Doc. #62). By this motion, Defendant seeks copies of probation records relating to said Defendant from approximately December 25, 1992 through the date of his termination from supervision.

On October 8, 2010, the Court Ordered a written response to Defendant Recktenwald's Motion from Plaintiff United States and the United States Probation Office.

On December 1, 2010, the Court received the attached letter response from the United States Department of Probation for the District of Nevada. That response sets forth the records requested by Defendant Recktenwald.

///

///

**IT IS THEREFORE ORDERED that** Defendant Recktenwald's Motion Request for Disclosure of Supervision Records of the U.S. Probation Office (Doc. #62) is **GRANTED** to the extent that the Clerk of Court shall forthwith transmit via Certified Mail Return Receipt to Defendant Recktenwald a copy of this Order together with the attachment thereto in the form of the United States Department of Probation Report dated December 1, 2010.

DATED: December 22, 2010.

PHILIP M. PRO
United States District Judge

**United States District Court**
**District of Nevada**
**Probation Office**

**Christopher Hansen**
**Chief United States Probation Officer**
**Foley Federal Building**
**300 So. Las Vegas Blvd., Ste. 1200**
**Las Vegas, Nevada**
**89101**



**Tel: (702) 527-7300**
**Fax: (702) 527-7345**

December 1, 2010

Honorable Philip M. Pro
United States District Judge
District of Nevada

**RE: RECKTENWALD, Paul**
**Case No.: 2:91-CR-115-PMP-RJJ**

**RESPONSE TO DEFENDANT'S MOTION FOR DISCLOSURE OF SUPERVISION RECORDS**

To: The Honorable Philip M. Pro:

This report is in response to the Court's Order, dated October 7, 2010, directing the probation office to prepare a written response to defendant Paul Recktenwald's Motion/Request for Disclosure of Supervision Records. Due to a probation office oversight, the directive and due date of November 8, 2010, was overlooked during receipt of the Order via CM/ECF. On November 29, 2010, we learned of our oversight after receiving a telephone call from the Court's Judicial Assistant.

As background, on October 29, 1991, Paul Recktenwald was convicted in the United States District Court, District of Nevada, of Criminal Conspiracy to Commit Theft of U.S. Mail, and Possession and Forgery or Endorsements Upon Stolen U.S. Treasury Checks. Your honor sentenced the defendant to 10 months in custody with credit for time served. Supervised release commenced in the District of Nevada on December 24, 1992, and expired on December 23, 1995.

With respect to the issue of our supervision records, Recktenwald has previously corresponded with our office directly requesting information from the probation office file. He was informed in a letter from the probation office, dated July 7, 2010, that in current form his request did not comply with Rule 32-2, Local Criminal Rules, Rules of Criminal Procedures, which addresses disclosure of probation records.

Recktenwald filed the instant motion/request for probation supervision records with the District Court on August 26, 2010. In response to the Court's request, the probation office has copied below all relevant probation correspondence records (chronos) as requested by the defendant. The chronos

were all completed by the supervision officer, Mike Severance, denoted by MS or MPS after the chrono or his supervisor at the time, Jim Langston, denoted by JLL after the chrono.

The following should assist the Court in understanding the chrono codes used in the notes below. P-H or P-HV refers to a personal home visit; P-T or C-T refers to a personal or collateral source telephone call; C-C refers to contact with a collateral source in the community.

**February 1, 1995:** P-H - Accompanied by Senior USPO John Gonska. We went to Paul Recktenwald's mobile home located in the western most part of Pahrump off of Bannavitch Road. As we knocked on the door, Paul drove up in a 1987 red Firebird. license plate I forgot to get. The car was occupied by Paul and two adult females by the names of Beverly Adamchik and Debra Valentine and her approximately 13 year old daughter, Leslie Holmes. We went inside the trailer and I asked Paul to submit a urine specimen for urinalysis. Paul admitted prior to submitting the urinalysis that he had smoked pot four to five days prior to this. Unbeknownst to me at the time, Senior USPO Gonska was in the living room talking to another teenage daughter of Debra Valentine - name unknown. The girl had bandages on her arm and that prompted John to ask what was wrong with her. She said that she had just been released from the hospital where she was in there for awhile and had her stomach pumped. John assumed that it was a drug overdose and that she had tried to commit suicide, although he did not ask her directly. I will call Paul Recktenwald and get more details on this.

We took a tour of the house and did not see any illegal contraband, although it was in disarray and very filthy. According to Paul. there are six children in the home - all children of Debra Valentine. In the home at the time though were only three children. The youngest one was named Mitchell; he was approximately five years old.

This was approximately 2 p.m. and we were wondering why they were not in school. I need to contact child protective services and inquire if this is the situation they need to investigate. Also instructed Paul to OV next week and to get in touch with Clayton at CCSN as he said he has been experiencing emotional difficulties over his step-son Joey's incarceration through Clark County Juvenile Probation. MS:bm

**February 2, 1995:** C-T - to Jamie Esplin with Child Protective Services in Las Vegas. His phone number is 486 - 5110. Jamie covers the Pahrump area. I left message on his voice mail for him to return my call . MS:bm

**February 10, 1995:** C-T - Shortly after staffing the case with SUSPO Langston. I received a call from Jamie Esplin. Advised him of the situation and he said that they were well aware of Debra Valentine and her children. They did not, however , know that she had moved in with Paul Recktenwald. Jamie said that he would advise the case worker ASAP and that, in all likelihood, the children will be removed from the home and returned to California. MS:bm

**February 17, 1995:** C-T - to Helen Taylor of Child Protective Services. I provided Helen with all the details of Recktenwald's criminal history and the fact that he has recently threatened his mother. Taylor has interviewed Recktenwald regarding the living situation with the children. After I provided Helen Taylor with the criminal history of Recktenwald including his mental health incarcerations, she said that she was going to contact a California Child Protective Service worker and have the children removed back to California where apparently they had lived prior to moving to Nevada.

I advised Helen to use extreme caution with Mr. Recktenwald as I consider him to be a highly volatile and violent man. MS:bm

**June 1, 1995:** P-HV - Accompanied by PO Gossard made a home visit at Paul's residence. We were met at the door by Debra Holmes who is mentioned in earlier chronos. Three of her children were in the residence. Paul came stumbling out of his room still recuperating from his surgery I saw two of the scars and noted that he had a hard time walking and turning his head. I did not ask him for a UA since he's having a difficult time standing in Paul's room which was in disarray I noticed the young children's clothes strewn about. I asked Paul if it was his room and he said yes. I asked him if any of the children were staying in his room and said no.

**June 2, 1995:** C-T - To Jamie Esplin with Child Protective Services at 486-5110. I left message for Jamie to return my call. I gave him a brief message on what was going on with Recktenwald and that the same children that were removed from his house were once again living there. MPS:pc

**June 7, 2995:** C-T - from DCFS officer Jamie Esplin, who is investigating children that are staying at O ' s trailer. He was familiar with case and aware that PO Severance had reported this before. He advised that the children were under the control of California State authorities, and that California was suppose to pick children up. Officer will contact Cal. St. authorities again and if they aren't going to pick up children then Nevada authorities will. Advised that PO Severance would be available on Monday if further information needed. JLL

**June 20, 1995:** P-T - Paul called in very irate. He said that Jamie Esplin the case worker at Clark County Juvenile Court accused him of being a murderer in Court in reference to the child custody hearing of Debra Love. This woman was residing with Paul as well as her five children. Paul threatened to punch Jamie Esplin out if he came out to his house because of the things he said about Paul. I confronted Paul on this and said that he was in fact convicted of murder as well as child lewdness. I said that I was quite concerned that the children were in his home and I advised him that he is not to have these children back in his house. I further advised him that if he has anyone else move into his home that he is to clear this through me first. MPS:pc

**December 5, 1995:** C-T - from Debra Valentine, Miranda Holmes mother. I asked Debra about the allegations that her daughter Miranda made against Paul Recktenwald. Debra stated that as far as she knew her daughter was telling the truth. I requested of her to have Miranda to give me a call when she gets out of school.

C-T- from Mandy Holmes. I spoke with Mandy regarding her statement to police and the district attorney's office. Mandy recanted her story that she had told the police. She advised me that she was the one that called Paul Recktenwald and asked him to come and pick her up because both her foster mother and her mother were drunk . She stated that Paul never had sex with her nor her sister Leslie.

**STAFFING OF CASE** - with DCUSPO and SUSPO - I staffed Recktenwald violation again with both David and Jon. After hearing that the key witness in this case recanted her story, both advised me that I should not proceed with revocation proceedings but rather just write a violation report requesting no adverse action.

C-T - to Assistant District Attorney Thomas Cockran. I asked Thomas if he is still going to proceed with prosecution even though their key witness has recanted her story. He stated that they were going to since they had an admission from Paul Recktenwald that he had sex with Mandy. I pointed out however, that Paul is now denying that he said this to the Nye County Sheriff's office and also that Mandy is denying that they had sex. Cockran stated that he is still going to proceed with both the statutory sex seduction charges and the possession of controlled substance charges. MPS:pc

**December 4, 1995:** C-C - went to 2211 Scales Way and interviewed the grandmother of Mandy Holmes, Betty Valentine. Betty advised that as far she knew from speaking to Mandy - Paul had gone down to Covina, CA and transported Mandy back to Las Vegas where he kept her in his home for approximately a week. It wasn't until she was able to call a neighbor of Betty Valentine that she got away from Paul. Betty stated that Mandy had told her that she had been forcible raped by Recktenwald. I asked both Heather and Betty if they knew if Leslie the older sister of Mandy had been in a relationship with Paul. Neither could confirm this allegation. I was accompanied by DCUSPO Lawhead and SUSPO Gonska on this interview.

I asked Betty to call her daughter Deborah Valentine and have Deborah call me collect so that I can talk with both Deborah and her daughter Mandy regarding this situation.

C-C - Nye County sheriff's office - spoke with Sergeant Phillips who looked at his written statement that I had and reiterated to me that Paul Recktenwald had admitted to him that he had consensual sex with both Mandy and Leslie. Sergeant Phillips said that he would be willing to come to Federal Court and testify to this fact.

Sergeant Phillips also said that he would assist us in any way when we got the warrant for Mr. Recktenwald's arrest.

C-C - Went to Nye County District Attorney's office and asked for Investigator Rob Smith or Attorney Thomas Cockran. Neither were in so I left a card and I obtained a card from the receptionist for Attorney Cockran. MPS:pc

**January 9, 1996:** CLOSING CHRONO - Recktenwald was sentenced on October 29, 1991, and had a 3 yr period of supervised release. He began supervised released on December 24, 1992. Recktenwald was never employed having incurred an injury and thus subsided off of SHS disability. He made only a minimal attempt to satisfy his restitution during this period. He was brought back to court on 1 occasion for violation of probation but there were numerous violation reports for drug use and failure to comply with probation officer 's instructions as well as failure to pay restitution.

The last reported violation to the Court was dated December 13, 1995, in which this officer outlined Recktenwald's arrest on a charge of statutory sexual seduction and possession of a controlled substance. MPS:crs

However, after investigation by this officer and to the charges of statutory sexual seduction it appeared that these charges were a fabrication from the victim. However, the State is still going to pursue these charges and therefore we ask that out Court take no action and let supervised release expire on its regular date. MPS:crs

In addition to the chrono notes above, I have enclosed a violation report prepared by Probation Officer, Michael Severance, dated December 13, 1995, requesting supervision expire as scheduled. This memorandum to Your Honor also outlines our conclusion at the time regarding the allegations that ultimately led to the defendant's state conviction.

Please let us know if we can be of further assistance.

Respectfully submitted,

CRBoardman

Chad R. Boardman, Deputy Chief
United States Probation Officer



UNITED STATES PROBATION OFFICE

M E M O R A N D U M

RE: RECKTENWALD, Paul
CASE NO.: CR-S-91-115-PMP(RJJ)

VIOLATION REPORT
NO ADVERSE COURT ACTION RECOMMENDED

December 13, 1995

TO: THE HONORABLE PHILIP M. PRO
U. S. DISTRICT COURT JUDGE

Mr. Recktenwald began a three year period of supervised release on December 24, 1992, his conviction was for Criminal Conspiracy to Commit Theft of U. S. Mail Possession and Forgery or Endorsement Upon Stolen U. S. Treasury Checks in Violation of 18 USC § 371 and § 510(a)(1).

The purpose of this memorandum is to inform the Court that our office recently became aware that Mr. Recktenwald committed a number of violations of his supervised release. Mr. Recktenwald was arrested on October 7, 1995, on two counts of Statutory Sexual Seduction and two counts of Possession of Controlled Substance - Methamphetamine. Mr. Recktenwald failed to report these arrests to this officer and upon investigation this office discovered that Mr. Recktenwald left the District of Nevada without permission during July 1995 and September 1995.

According to a Nye County police officer's arrest report, Mr. Recktenwald is accused of traveling to Covina, California on September 25, 1995, where he picked up 14 year old Miranda Holmes. The report further states that Recktenwald drove her to Pahrump, Nevada and forcibly held her captive in his trailer for at least one week. Miranda Holmes had advised the police that on two separate occasions September 28, and 29, 1995, Recktenwald forced her to have sexual intercourse. The possession of controlled substance charge stems from the interview of Miranda Holmes in which she stated that Recktenwald had enticed her to use "speed" and that the drug was still in his home. Police officers subsequent to Mr. Recktenwald's arrest, obtained his consent to search his home whereupon they found two bindles of what was believed to be methamphetamine. A preliminary field test conducted by the police officers proved positive for methamphetamine.

However, upon independent investigation by this officer, Miranda Holmes recanted her statement regarding the rape and advised that she had called Recktenwald to pick her up in California and drive her to Pahrump, Nevada. She stated that she did not have any sexual relations with Recktenwald and that she was forced by her grandmother to make these false allegations against Recktenwald.

The Court should also be aware that Mr. Recktenwald has not satisfied his restitution, nor has he made any effort to make good faith payments. However, this issue has been visited before in the past and the Court did not feel inclined to take any remedial

actions given Mr. Recktenwald's financial and health status.

Therefore, this office would recommend that no adverse action be taken at this time against Mr. Recktenwald and that the Court allow his supervised release to expire on the regular date of December 23, 1995.

Lastly, the Court should be aware that the Nye County District Attorney's office is proceeding with prosecution of the two counts of Statutory Sexual Seduction and two counts of Possession of Controlled Substance - Methamphetamine.

If the Court desires to pursue an alternative course of action, please do not hesitate to contact this officer.

Respectfully submitted,

MICHAEL P. SEVERANCE
Sr. U. S. Probation Officer

MPS:pc

APPROVED:
JAMES L. LANGSTON, Supervising
U. S. Probation Officer